FILED IN OPEN COURT

1-25-2011

CLERK, U S DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 3:11-cr-3-J-99MMH-JBT

DIABETIC SERVICES AND SUPPLIES, INC.

## PLEA AGREEMENT

### A.    Particularized Terms

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A. Brian Albritton, United States Attorney for the Middle District of Florida, and the defendant, DIABETIC SERVICES AND SUPPLIES, INC. and the attorney for the defendant, Robert S. Willis, mutually agree as follows:

### 1.    Count Pleading To

The defendant shall enter a plea of guilty to Count One of the Information. Count One charges the defendant with Health Care Fraud, in violation of 18 U.S.C. §§ 1347 and 2.

### 2.    Maximum Penalties

Count One carries a maximum a fine of $500,000, and a special assessment of $400 per felony count, said special assessment to be due on the date of sentencing. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense, and with respect to other offenses, the

Defendant's Initials _____

AF Approval _____

Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

### 3.   Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

| | |
|---|---|
| First: | That the defendant knowingly executed, or attempted to execute, a scheme or artifice to defraud a health-care benefit program, or to obtain money or property owned by, or under the custody or control of, a health-care benefit program by means of false or fraudulent pretenses, representations, or promises; |
| Second: | That the false or fraudulent pretenses, representations, or promises related to a material fact; |
| Third: | That the defendant acted willfully and intended to defraud; and |
| Fourth: | That the defendant did so in connection with the delivery of or payment for health-care benefits, items, or services. |

### 4.   No Further Charges

If the Court accepts this plea agreement and Mark Blaker, president of Diabetic Services and Supplies, Inc., successfully completes the Pretrial Diversion Program, the United States Attorney's Office for the Middle District of Florida agrees not to charge any individuals with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

Defendant's Initials __*W B*__        2

5. **Mandatory Restitution to Victim of Offense of Conviction**

Pursuant to 18 U.S.C. §§ 3663A(a) and (b), defendant agrees to make full restitution to the U.S. Department of Health and Human Services Medicare, Division of Premium Collection and Billing, PO Box 7520, Baltimore, MD 21207.

6. **Forfeiture of Assets**

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 982(a)(7), whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees. The assets to be forfeited specifically include a personal money judgment as to the defendant's President, Mark Blaker (Blaker), individually, in the amount of $230,000.00, representing the amount of proceeds obtained as a result of the offense in Count One.

The defendant's President, Blaker, individually, agrees to immediately tender payment in the amount of $10,000.00 to the United States. The remaining balance of $220,000.00 shall be paid in monthly payments of not less than $1,500.00 each month; the first payment is due at defendant's sentencing hearing and, thereafter, will be paid by the 10th day of each month. All payments shall be made by certified check made payable to the United States Marshals Service and delivered to the U.S. Attorney's Office, 300 N. Hogan Street, Suite 700, Jacksonville, Florida 32202-4270, in care of the Asset Forfeiture Section. The defendant's President, Blaker, individually, agrees that, in the event any scheduled payment is more than ten days late, he will be considered in default of the terms of this agreement; upon notice to Blaker that he is in default and

Defendant's Initials  _𝑙𝑙 𝑏_          3

after providing a 10 day period to cure the default, the United States shall, at its option, be entitled to seek forfeiture of any property (substitute assets) of Blaker, individually, up to the value of the remaining balance in order to satisfy the money judgment. This Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have that the forfeiture constitutes an excessive fine.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government and the defendant consents to the filing of a motion by the United States for immediate entry of a money judgment against the defendant's President, Blaker, individually. Pursuant to the provisions of Rule 32.2(b)(1), the United States and the defendant request that at the time of accepting this plea agreement, the Court make a determination that the government has established the amount of the proceeds is $230,000.00 and enter a Personal Money Judgment against the defendant's President, Blaker, individually. Pursuant to Rule 32.2(b)(4)(A), the defendant agrees that the Personal Money Judgment against Blaker, individually, shall be final as to the defendant at the time it is entered, notwithstanding the requirement that it be made a part of the sentence and be included in the judgment.

The defendant's President, Blaker, individually, agrees to take whatever steps are necessary to pass clear title to the United States of any assets sought to satisfy the

Defendant's Initials ___M /7___                4

money judgment. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant's President, Blaker, further agrees to take all steps necessary to locate property which could be used to satisfy the money judgment and to pass title to the United States before the defendant's sentencing. To that end, Blaker agrees to fully assist the government in the recovery and return to the United States of any assets, or portions thereof, as described above wherever located. The defendant's President, Blaker, agrees to make a full and complete disclosure of all assets over which he exercises control and those which are held or controlled by a nominee.

Forfeiture of Blaker's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

### B.   **Standard Terms and Conditions**

### 1.   **Restitution, Special Assessment and Fine**

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1) (limited to offenses committed on or after April 24, 1996); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663 (limited to offenses committed on or after November 1, 1987) or § 3579, including restitution as to all counts charged, whether or not the defendant enters a plea

Defendant's Initials  _MB_          5

of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and due on date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

### 2.   Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit, upon execution of this plea agreement, an affidavit reflecting the defendant's financial condition. The defendant further agrees, and by the execution of this plea agreement, authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office or any victim named in an order of restitution, or any other source, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations

Defendant's Initials ___*M/B*___          6

to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.

### 3.   Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.  Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement.  The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

### 4.   Appeal of Sentence-Waiver

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground, including the

Defendant's Initials  _IMB_          7

ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by Title 18, United States Code, Section 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by Title 18, United States Code, Section 3742(a).

### 5.   <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

### 6.   <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

### 7.   <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and

Defendant's Initials  _____        8

defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial.  The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

Defendant's Initials  _MB_                    9

8. <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below as to the defendant are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt:

10. <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

11.   **Certification**

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this ___25___ day of ~~November, 2010~~. January 2011

ROBERT E. O'NEILL
United States Attorney

_____
MARK BLAKER
PRESIDENT, DIABETIC SERVICES
AND SUPPLIES, INC
Defendant

By: _____
RUSSELL C. STODDARD
Assistant United States Attorney

_____
ROBERT S. WILLIS, ESQ.
Attorney for Defendant

_____
MAC D. HEAVENER, III
Assistant United States Attorney
Deputy Chief, Jacksonville Division

Defendant's Initials __MB__              11

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                    Case No. 3:10-cr- 3-J-99MMH-JBT

DIABETIC SERVICES AND SUPPLIES, INC

### PERSONALIZATION OF ELEMENTS

1.    Do you admit that on or about April 23, 2007, in Jacksonville, Florida,

DIABETIC SERVICES AND SUPPLIES, a Florida Corporation, presented or caused to

be presented a false and fraudulent claim against the United States Department of

Health and Human Services, as charged in Count One of the Information?

2.    Do you admit that DIABETIC SERVICES AND SUPPLIES acted willfully

and with knowledge of the false and fraudulent nature of the claim?

3. Do you admit that the false
and fraudulent representations, pretenses
or promises related to a material
fact.          MG

Defendant's Initials ___MG___

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          Case No.: 3:10-cr- 3 -J- 99 MMH -JBT

DIABETIC SERVICES AND SUPPLIES, INC

## FACTUAL BASIS

The Medicare program ("Medicare") was a federal program that provided

supplementary medical insurance benefits for individuals, typically those sixty-five years

old and older, who were entitled to Social Security benefits ("Medicare beneficiaries").

The benefits available under Medicare are prescribed by statute and by federal

regulations under the auspices of the Centers for Medicare and Medicaid Services

("CMS"), an agency of the United States Department of Health and Human Services

("HHS") responsible for the administration of the Medicare program.  CMS has

contracted with CIGNA Medicare to receive, adjudicate and pay certain Durable

Medical Equipment (DME) Medicare claims submitted to it by Medicare beneficiaries

and providers in the State of Florida.

Medicare was a "health care benefit program" as defined by Title 18, United

States Code, Section 24(b).  The operation of the Medicare program affected

commerce.  Part B of the Medicare program pays providers for outpatient medical

services such as infusion therapy and physician office visits.

Defendant's Initials _MA_____

To bill Medicare for services rendered, a medical provider submits a claim on a CMS Form 1500 to CIGNA Medicare, or sends the form to a billing service, which, in turn, bills Medicare on behalf of the provider. The information required included: (a) the Medicare beneficiary's name; (b) the Medicare beneficiary's Health Insurance Claim Number (HICN); (c) the medical service provided as identified by the standard Current Procedural Terminology (CPT) or Healthcare Common Procedural Coding System (HCPCS) code number or numbers, which define the nature of the item or service; (d) the diagnosis or diagnoses supporting the services  provided as identified by the appropriate standard diagnosis code number or numbers; (e) the name, National Physician Identification (NPI) and/or Unique Physician Identification Number (UPIN) of the physician ordering the medical services; (f) the date the medical service was provided; and (g) the charges for the medical service provided to the Medicare beneficiary.

When a CMS Form 1500 is submitted, the provider certifies that the contents of the form are true, correct, and complete, and that the form was prepared in compliance with the laws and regulations governing the Medicare program. On the form, the Medicare provider certifies that "the services shown on this form were medically indicated and necessary for the health of the patient and were personally furnished by me or were furnished incident to my professional service by my employee under my immediate personal supervision, except as otherwise expressly permitted by Medicare or CHAMPUS regulations." The form advises the provider "any one who misrepresents or falsifies essential information to receive payment from Federal funds requested by

Defendant's Initials __MB__                2

this form may upon conviction be subject to fine and imprisonment under applicable Federal laws."

A contractor for Medicare DME claims in the western United States, Noridian Administrative Services, also operates the Medicare Pricing, Data Analysis and Coding (PDAC) center for the entire United States. The PDAC evaluates DME products such that the proper code can be assigned to the product based on the product's intended usage and inherent properties. Results of the PDAC's various reviews are published in the form of an online searchable product classification list, a list that assigns a HCPCS code to each product, which product is identifiable by the manufacturer's name as well as the specific product name given to the item by the manufacturer. Diabetic shoes and diabetic shoe inserts are products for which PDAC review is mandatory prior to their billing to the Medicare program. The PDAC establishes rigid guidelines as to product classification of diabetic shoes and diabetic shoe inserts, and as such, higher-quality products meeting these guidelines are assigned HCPCS codes from which the supplier of the product can receive a higher reimbursement from the Medicare program. In addition to the physical characteristics and materials of the product, the PDAC also establishes guidelines for the manner in which the diabetic shoe and diabetic shoe insert must be molded and fitted to the Medicare beneficiary, with the manner in which the insert is molded and fitted also affecting which HCPCS code must be used with any given product.

Under Medicare guidelines, there are several classes of shoe insoles or inserts that can be used with diabetic footwear. The current HCPCS codes used for inserts reimbursable by Medicare are A5513, A5512, and A5510. A5513 inserts are defined

Defendant's Initials  _MM_                    3

as, "For diabetics only, multiple density insert, custom molded from model of patient's foot, total contact with patient's foot, including arch, base layer minimum of 3/16 inch material of shore a 35 durometer or higher), includes arch filler and other shaping material, custom fabricated, each." A5512 inserts are defined as, "For diabetics only, multiple density insert, direct formed, molded to foot after external heat source of 230 degrees fahrenheit or higher, total contact with patient's foot, including arch, base layer minimum of 1/4 inch material of shore a 35 durometer or 3/16 inch material of shore a 40 durometer (or higher), prefabricated, each." A third HCPCS code, A5510, is used for prefabricated inserts that do not meet the Medicare requirements necessary to be billed under A5513 or A5512. The A5510 code is defined as, "For diabetics only, direct formed, compression molded to patient's foot without external heat source, multiple-density inserts, prefabricated, per shoe." Because the insert as described by A5510 is not considered total contact with the patient's foot at the time of distribution, it is not reimbursable by Medicare.

DIABETIC SERVICES AND SUPPLIES, Inc (DSAS) was incorporated in the State of Florida on November 4, 2002 by Joel Westermarck. The address in the inital corporate filing listed the address of the business as 7907 NW 18th Court in Margate, Florida. In the filing of the first annual report on June 23, 2003, the principal place of business was changed to 3948 Sunbeam Road #8, Jacksonville, Florida. The new President and Registered Agent for the corporation was changed from Joel Westermark to Mark Blaker. In a corporate filing dated April 27, 2005, the address for the corporation changed from 3948 Sunbeam Road #8, Jacksonville, Florida to 3108 Colgan Court, Jacksonville, Florida. In a corporate filing dated April 30, 2008, the

Defendant's Initials  _M/3_                    4

address for the corporation changed from 3108 Colgan Court, Jacksonville, Florida to 109 Carden Place, St. Johns, Florida. In the last corporate filing of an annual report, dated February 19, 2010, the address remained at 109 Carden Place, St. Johns, Florida. Although the corporation's location changed between 2003 and 2010, Mark Blaker remained as the President, Registered Agent, and sole officer of the corporation during this entire timeframe. The Federal Employer Identification (FEI) number of 81-0577649, which first appeared on the annual report filed in 2003, remained the same on all subsequent filings by DSAS with the State of Florida.

DSAS was a DME company that specialized in the fitting and distribution of diabetic shoes, diabetic shoe inserts and diabetic testing supplies. During the timeframe beginning January 1, 2006 and continuing though July 1, 2008, DSAS utilized diabetic shoe inserts manufactured by the Remington Products Company and distributed through a Tampa-based company named Euro International, Inc. All of the inserts purchased by DSAS from Euro International, Inc were coded at the A5512 or A5510 level. None of the inserts met Medicare guidelines for coding or reimbursement at the A5513 level. Prior to 2006, DSAS utilized diabetic shoe inserts from Euro International, Inc, performed the heat-molding directly to the patient's foot, and submitted claims to Medicare under HCPCS code A5512. In early 2006, when Medicare changed various regulations and decreased reimbursement by 20% for diabetic shoe inserts, DSAS continued distributing the same diabetic shoe inserts obtained from Euro International, Inc, but falsely and fraudulently began billing the inserts as if they were custom-molded inserts, that is, submitted false claims to Medicare under HCPCS code A5513. In addition to not meeting Medicare standards

Defendant's Initials __*MB*__                        5

for coding at the custom-molded level, these prefabricated diabetic shoe inserts were not even modified or molded to the patient, and were simply being distributed in their original packaging.  Distribution of unmodified inserts would result in the item being considered compression molded by the beneficiary, and therefore, coded at the A5510 level and not reimburseable. DSAS knew that if the proper codes that reflected the service being rendered were used, that the claims would have been denied.  As such, DSAS provided prefabricated diabetic shoe inserts and falsely and fraudulently submitted claims using the HCPCS codes for the provision of custom-molded diabetic shoe inserts.  DSAS electronically submitted, or caused to be submitted, these false claims for payment by the Medicare Part B program.

On April 23, 2007, DSAS submitted, or caused to be submitted claim number 107114713759000 to Medicare for three pairs of custom-molded diabetic shoe inserts provided to Medicare beneficiary WB.  Although the claim reflected that WB received custom-molded diabetic shoe inserts, in fact, WB received three pairs of unmodified prefabricated diabetic shoe inserts, a service non-reimburseable by Medicare.  The defendant submitted or caused to be submitted $300 on the claim to Medicare for this service, and DSAS was paid $180.91.  During the time period of January 1, 2006 through July 1, 2008, Medicare paid DSAS approximately $230,000 for reimbursement of all false claims submitted by DSAS.

Defendant's Initials _MB_                6